HENRY BEYER, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

86   369
109   230

Under the provision of the statute (2 R. S. 664, § 25), declaring and prescribing the punishment for the offense of taking a " woman unlawfully against her will with the intent to compel her by force, menace or duress  *  *  *  to be defiled," to constitute the offense, it is not essential that personal violence should be used in the unlawful taking.

The statute embraces a case where the woman did not consent to be taken away for her own defilement, but contrary to her wishes and intention in this particular and without her knowledge of the purpose contemplated, was induced to go with another for what was represented to her, by the latter, to be a lawful object, and was afterward, in accordance with the original intention of that other person, by force, menace or duress unlawfully defiled.

Where, therefore, upon the trial of an indictment charging such offense, it appeared that he prosecutrix unsuspicious of any unlawful intent, and relying upon ! s statements, was induced by false representations, on the

part of the prisoner, to the effect that he had procured her a situation as a servant in a respectable family, to go with him to a disreputable house where she was, in spite of opposition and resistance and efforts to escape on her part, by force, menace or duress defiled. *Held,* that the unlawful intent of the prisoner could fairly be inferred from the end attained; and that the evidence authorized a conviction.

Also *held,* that the provision of the act of 1848 (§ 1, chap. 105, Laws of 1848), providing against enticing or taking away an unmarried female of previous chaste character for the purpose of prostitution had no application, as that provision was designed to cover only cases where persuasion or artifice was employed and the object was finally accomplished without coercion and with the assent of the female.

The prisoner was jointly indicted with the keeper of the house. *Held,* that it was not essential in order to make out the offense to prove the existence of a conspiracy between the prisoner and his co-defendant.

(Argued June 23, 1881 ; decided October 11, 1881.)

ERROR to the General Term of the Supreme Court, in the first judicial department, to review judgment entered upon an order made May 20, 1881, which affirmed a judgment of the Court of General Sessions in and for the city and county of New York, entered upon a verdict convicting the plaintiff in error of the crime of unlawfully taking a woman against her will, with the intent to compel her by force, menace or duress to be defiled. (2 R. S. 664, § 25.)

The material facts are stated in the opinion.

*Alfred Stickler* for plaintiff in error. The felony under the first count for abduction requires proof of an unlawful taking against the will, and involves personal violence or menace. (*Kaufman* v. *People,* 11 Hun, 82; ·Laws of 1848, chap. 105, § 1.) An indictment created by statute must, in conformity to the rules, allege all the facts and circumstances necessary to bring the act charged as an offense directly within the statute. (*The People* v. *Wilber,* 4 Park. Cr. 19.) Whatever is necessary to be charged in an indictment in order to bring the party indicted within the statutory definition of the crime must be proved precisely as charged. (*Wood* v. *The People,* 9 Barb. 671 ; *Briggs* v. *The People,* 8 id.

547; *The People* v. *Enoch,* 13 Wend. 172–3; *Wood* v. *The People,* 53 N. Y. 511; *Enright* v. *The People,* 21 How. Cr. 583; *The People* v. *Davis,* 18 id. 134; *O'Leary* v. *The People,* 4 Park. Cr. 187; *Fellenger* v. *The People,* 15 Abb. Pr. 128; *Godfrey* v. *The People,* 63 N. Y. 207; *Palmer* v. *The People,* 5 Hill, 427; Greenleaf on Evidence, § 10; *People* v. *Bartow,* 1 Wheeler's Cr. Cas.; *People* v. *Dohring,* 59 N. Y. 374.) Before the accused could be held responsible for the acts of his co-defendant, the people were first bound to prove agency or combination between them. (*People* v. *Parish,* 4 Denio, 153; *Warner's Case,* 6 City Hall Recorder, 55; *State* v. *George,* 7 Ired. [N. C.] 321.) The motion for a verdict of acquittal on the ground that no conspiracy had been shown should have been granted. (*People* v. *Bennett,* 49 N. Y. 137; *Ruloff* v. *The People,* 18 id. 179.) The request to charge the jury that, before they could convict him, they must be satisfied beyond a reasonable doubt that there was a conspiracy existing between the accused and his co-defendant, in relation to the offense charged in the indictment, should have been granted. (*Wilds* v. *H. R. R. Co.,* 24 N. Y. 430; *Meyer* v. *Clark,* 45 id. 285; 25 How. 492; *Carpenter* v. *Stilwell,* 11 N. Y. 61; *Winchell* v. *Hicks,* 18 id. 558; *Bayley* v. *Smith,* 10 id. 489; 19 How. 1; *Zabriskie* v. *Smith,* 13 N. Y. 322.)

*Daniel G. Rollins,* district attorney, for defendant in error.

MILLER, J. The indictment upon which the prisoner was tried and convicted averred that he and one Dora Schernikon feloniously did make an assault upon the prosecutrix and then and there knowingly, feloniously and unlawfully did take her against her will, and with force and arms to compel her by force, menace and duress to be by some person or persons to the jurors unknown defiled, against the form of the statute in such case made and provided. The offense thus charged was for a violation of the provisions contained in section 25 of article 2, title 3, chapter 1 of part 4 of the Revised Statutes. (2 R. S. 664.) The serious question presented upon this writ of error is whether

the prisoner was guilty of taking the prosecutrix against her will with the intent by force, menace or duress to compel her to be defiled. That the prisoner unlawfully took the prosecutrix to a house where she was defiled was found by the verdict of the jury, and therefore cannot be controverted. Nor can it be doubted that the act was there accomplished by force, menace or duress, for there was testimony upon the trial showing that one or more of these instrumentalities were brought to bear in attaining the object which was intended, and was actually accomplished, and the finding of the jury is to that effect. The intent of the prisoner is also fairly to be inferred from the end attained, and the circumstances surrounding the case. There was also, we think, evidence tending to establish that the prosecutrix was taken by the prisoner to the house where she was defiled against her will and in violation of her wishes, within the meaning of the statute cited. The unlawful taking and the defilement of the prisoner by force, menace or duress being shown; the intent being apparent, and no proof establishing that the prosecutrix consented to accompany the prisoner for the purpose which was intended and finally accomplished, or that she assented to the act done, we think that there is no ground for claiming that she went voluntarily or consented in any way to go with the prisoner for an improper or an unlawful purpose. There was sufficient proof upon the trial that the prisoner falsely represented to the prosecutrix that he had procured her a situation as a servant in a respectable family, and that unsuspicious of the object he had in view, and relying upon his statement she was induced to proceed with him to the disreputable house where the crime was consummated. It cannot, therefore, be said that she went there voluntarily for the purpose of being defiled, and it is manifest that it was contrary to her will to become the inmate of such a house, and that she neither expected nor contemplated any such result. She was an unwilling victim of misrepresentation, fraud and falsehood, and as the prisoner intended to accomplish her defilement, and she did not go willingly to be defiled, or in any way assent to the act, it is a logical and rational inference that she was taken unlawfully

against her will within the meaning of the statute. This con-
clusion is supported by proof that she manifested that her
will was in a contrary direction; by opposition and resist-
ance, and by a fruitless effort to escape. The statute does
not require that personal violence should be used in taking a
person for the purpose named, and it is not difficult to see
that the will may be affected and controlled by threats
and intimidation, or by falsehood and deceit. The taking of
the prosecutrix for the purpose of being defiled was against
her will, also for the reason that she had another and different
object in view than that which was intended to be and actually
was attained by the prisoner. She did not go of her own volition
with any such purpose, nor did she quietly assent to her own
defilement, and the taking her by the prisoner, under the cir-
cumstances, as well as the subsequent acts of those who co-
operated with him, was against her will or consent. Giving
to the statute a reasonable interpretation it was evidently in-
tended to embrace a case where the person has not consented
to be taken away for her own defilement, but, contrary to her
will, wishes and intention, and without her knowledge of
the purpose in contemplation, is induced to go with another
for a lawful object, and is afterward in accordance with the
original intent, by force, menace or duress, unlawfully defiled.
The omission in the statute of any language showing that a
forcible taking was required is somewhat significant and evinces
that even without force the taking may be against the will, and
that actual force by personal violence is not required. As we
have seen, other means employed may be sufficient to establish
a taking against the will. It may also be remarked as bearing
upon the interpretation to be given to the statute that any
other or different construction would leave a case of this char-
acter, where there was no actual violence used in the first in-
stance, unprovided for. Nor is there any valid ground for
claiming that section 1 of chapter 105, S. L. of 1848, which
provides against inveigling, enticing or taking away any un-
married female of previous chaste character under the age of
twenty-five years for the purpose of prostitution has any ap-

plication to the case at bar, as that statute was evidently designed to cover only cases where persuasion or artifice was employed and the object was finally accomplished without coercion and with the assent of the person enticed. If the interpretation we have placed upon the statute is correct, no error was committed by the court in denying the motion to acquit the prisoner upon the ground that no offense was made out within the statute. Nor was any error committed in denying the motion to acquit and to direct a verdict upon the ground that no conspiracy had been shown. Although the evidence upon the trial tended to establish that the prisoner was acting in concert with the persons who kept the house of prostitution to which the prosecutrix was taken, his guilt did not depend upon the fact that he was aided by these persons in the commission of the crime, and it was not absolutely essential to establish a conspiracy before the prisoner could be convicted of the offense charged. For this reason also the request to charge that before the jury could convict him, they must be satisfied, beyond a reasonable doubt, that there was a conspiracy between the accused and his co-defendant, who was the keeper of the house, in relation to the charge in the indictment, was properly refused. This question is fully considered in the prevailing opinion of the General Term by Daniels, J., and further discussion, therefore, is not required. The other questions in the case are also sufficiently considered in the opinion of Judge Brady, and, concurring in the views there expressed, it is not necessary to examine them at length.

The judgment was right and the conviction should be affirmed.

All concur. Folger, Ch. J., and Earl, J., though having some doubt whether the words of the statute "against her will" did not imply the use of physical force, were not strong enough therein to dissent.

Judgment affirmed.